UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CITY OF STERLING HEIGHTS
POLICE & FIRE RETIREMENT SYSTEM,

    Plaintiff,

    v.                                     Case No. 13-C-1159

KOHL'S CORPORATION,
KEVIN MANSELL, and
WESLEY S. MCDONALD,

    Defendants.

---

## DECISION AND ORDER GRANTING MOTION TO STRIKE (DOC. 50), DENYING WITHOUT PREJUDICE MOTION TO DISMISS (DOC. 43), AND SETTING STATUS CONFERENCE

Various shareholders of Kohl's Corporation filed this securities lawsuit against the corporation and two of its officers concerning alleged devaluation of shares after the company disclosed that its accounting for lease agreements had not complied with Generally Accepted Accounting Principles. The City of Sterling Heights Police and Fire Retirement System filed this case; however, the Pension Trust Fund for Operating Engineers later was appointed lead plaintiff. Following its appointment as lead plaintiff, the Pension Trust Fund filed an Amended Complaint, which is the operative pleading at this time.

The Amended Complaint raises two causes of action against defendants. First, it asserts violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b–5. Section 10(b) of the Act provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest

or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b–5 forbids a company or an individual "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). Second, the Amended Complaint alleges violations of § 20(a) of the Securities Exchange Act of 1934, which states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a).

Kohl's, Kevin Mansell, and Wesley McDonald moved to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants attached twenty-seven exhibits to a declaration of counsel in support of their motion to dismiss the Amended Complaint. (See Docs. 45–47). The exhibits total about 500 pages. Plaintiffs filed a brief opposing the motion to dismiss and, by separate motion and brief, asked the court to strike many of defendants' submitted documents.

## MOTION TO STRIKE

Generally, Rule 12(b)(6) and (c) motions focus on the allegations in the complaint. Under Fed. R. Civ. P. 12(d), the district court may exclude documents submitted with a Rule 12(b)(6) or (c) motion to dismiss or treat the motion as one for summary judgment. But exceptions to the rule exist for documents that should be considered part of the pleadings and those that the court can judicially notice.

Documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to a claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). This rule prevents parties from surviving a

2

motion to dismiss by artful pleading or by failing to attach relevant documents to the complaint. *188 LLC*, 300 F.3d at 735. The exception is narrow; it is aimed at situations in which a plaintiff quotes from a document or the case requires interpretation of an unattached contract, for instance. *Tierney*, 304 F.3d at 738. "It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment . . . ." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

The court may take judicial notice of facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice "is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). However, the device "merits the traditional caution it is given, and courts should strictly adhere to the criteria by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id.*

Plaintiffs move to strike Exhibits 3, 9, 12, 19, 20, 21, 22, 23, 24, 25, 26, and 27[1] in their entirety. Moreover, they move to strike portions of Exhibits 2 and 7.[2] In addition, they ask the court to strike those portions of defendants' briefs filed in support of the motion to dismiss that discuss or rely upon the challenged exhibits.

Defendants contend that the motion to strike is procedurally improper. Civil L.R. 7(i) provides that any motion not authorized by the Federal Rules of Civil Procedure or local rules or court order must be accompanied by a motion requesting leave to file it, and

---

[1] All exhibits referenced with respect to plaintiffs' motion to strike are attached to Documents 45, 46, and 47 of the record.

[2] Plaintiffs do not challenge the remaining exhibits.

3

plaintiffs did not seek permission under Civil L.R. 7(i) to file their motion to strike. Further, motions to strike are generally disfavored. *See* Civil L.R. 56(b)(9) (stating that regarding summary judgment motions, collateral motions such as motions to strike are disfavored). In addition, defendants contend that by briefing the motion to strike plaintiffs have expanded their page limitations, as they should have addressed the documentation issues within the confines of the brief in opposition.

Nevertheless, the court will consider the motion to strike. Defendants' submission of 500 pages of documentation raised the court's concerns as to whether defendants seek summary judgment rather than a Rule 12(b)(6) ruling. The court would have scrutinized defendants' submissions even without a motion to strike. Further, it is true that Fed. R. Civ. P. 12(f) permits motions to strike from *pleadings* "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." But to the extent defendants justify their submissions on the incorporation doctrine (i.e., that the documents should be considered part of the pleadings because they are referred to in the plaintiff's complaint and central to a claim), Rule 12(f) seems to apply. And to the extent defendants argue judicial notice, "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). Finally, though plaintiffs' motion may, for practical purposes, allow them to exceed the page limits to discuss the use of the submitted documents, defendants' opposition brief on the motion to strike evens out any page-limit concerns.

Defendants' documentary submissions are rejected for several reasons. First, the Declaration of Robert J. Giuffra, Jr. is insufficient to authenticate them. Affidavits and declarations must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify about the matter. *See* Fed. R. Civ. P. 56(c)(4). Giuffra states that he is admitted to practice in this district

and is a member of the law firm Sullivan & Cromwell LLP, counsel to the defendants. He swears that the documents he attached to the declaration are true and correct copies. (*See* Doc. 45 at 1.) However, these attestations fail to describe any personal knowledge concerning the attachments. What personal knowledge does he have to swear to the analysts' reports, for instance? Where did he get them? Are they publicly available? How can he vouch that they are true and correct copies of the originals? Similarly, how does he have personal knowledge of McDonald's 10b5-1 trading plans, which reference what is said to be contracts between McDonald and the Charles Schwab firm? Where did he find the letter from the chief accountant of the Securities Exchange Commission?

Second, the submitted documents are not incorporated in the Amended Complaint. For instance, the analyst reports are neither mentioned nor central to plaintiffs' claims, which concern alleged misrepresentations regarding lease accounting and internal procedures. Defendant cites three places within the Amended Complaint where the reports are referenced. (Doc. 52 at 26 (citing Doc. 42, ¶¶ 25, 93, 162).) However, none of the allegations rely on such reports or specifically mention them. Paragraph 25 of the Amended Complaint states that the individual defendants controlled Kohl's reports and information provided to securities analysts. (Doc. 42, ¶ 25.) Paragraph 93 states that Kohl's provided information to analysts. (Doc. 42, ¶ 93.) And paragraph 162 states that analysts from major brokerage firms wrote reports on Kohl's and made them publicly available. (Doc. 42, ¶ 162.) That the defendants provided information to analysts and that analysts generally wrote reports in no way incorporates the specific analyst reports submitted with the motion to dismiss. None of the references in the Amended Complaint imply that the analyst reports attached to defendants' motion to dismiss are central to plaintiff's claims. And if the analyst reports are not incorporated in the Amended Complaint, defense counsel's summary of the reports surely is not.

The argument that the Amended Complaint incorporated the 10b5-1 trading plan rests on a single paragraph in the Amended Complaint (see Doc. 52 at 17) stating in part: "to the extent that any of the Individual Defendants' sales took place pursuant to a Rule 10b5-1 trading plan, they consciously or recklessly disregarded adverse information concerning the Company's erroneous lease accounting practices, and the conformity of its financial statements with GAAP, to allow their sales to take place as scheduled." (Doc. 42, ¶ 157). This allegation does not rely on any trading plans. Neither within this paragraph nor elsewhere in the Amended Complaint do plaintiffs ever explicitly reference either of the two specific 10b5-1 plans submitted as Exhibit 25. The Amended Complaint simply states that *if* a plan existed, defendants acted consciously or recklessly. McDonald's 10b5-1 trading plans are not incorporated within the Amended Complaint.

Defendants argue that proxy statements for the years 2009, 2010, 2011, and 2012 are incorporated in the Amended Complaint, but the Amended Complaint does not cite or reference the proxy statements.

Certain allegations in the Amended Complaint may contain similar or identical to information within the Form 4s submitted by defendants. (*Compare* Doc. 42, ¶¶ 155-57 *with* Doc. 47, Ex. 24.) However, it is not clear from the pleadings whether plaintiffs used the Form 4s as the source of their information. Nothing in the Amended Complaint suggests that plaintiffs relied on the Form 4s to form the basis of any claim. *See In re Shopko Sec. Litig.*, No. 01-C-1034, 2002 U.S. Dist. LEXIS 23887, *3–*5 (E.D. Wis. Nov. 5, 2002) (Adelman, J.) (declining to consider as incorporated documents that did not supply the source for a Rule 10b-5 claim but only evidence in support or denial of such a claim).

Third, several of the challenged submissions go beyond what can be judicially noticed. Counsel's summary of the analyst reports, chart of beneficial ownership, and chart of dispositions of Kohl's stock (Exs. 9, 22, 23) are not items that can be accurately

and readily determined from sources whose accuracy cannot reasonably be questioned. The court cannot be confident that errors did not occur in summarizing the information or that the summaries include all information the plaintiffs or the court would find pertinent. Additionally, the court is unable to find that the analyst reports are beyond reasonable dispute. As documents, the reports are not facts generally known and whose accuracy cannot reasonably be questioned. It may well be that the reports are publicly available and reliably produced, but that is not self-evident. At trial the court would expect a party to authenticate such a document and explain its production.[3]

And fourth, even though the court could judicially notice the existence of some documents (such as Forms 10-K, 10-Q, 8-K, and 4 that Kohl's filed with the SEC) and what they say, the content of the documents cannot be used for the truth of the matters asserted (as defendants use them in their motion to dismiss). *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11C8332, 2013 U.S. Dist. LEXIS 19156, *35-*38 (N.D. Ill. Feb. 13, 2013) (St. Eve, J.) (discussing cases and concluding that the court may take judicial notice of the fact that proxy statements exist and contain certain statements, but not the truth of the statements themselves); *In re Shopko Sec. Litig.*, 2002 U.S. Dist. LEXIS 23887, at *5–*7 ("Courts have taken judicial notice of SEC filings and considered them in ruling on motions to dismiss. However, in these cases, the courts did not consider the SEC filings for the truth of the defendants' disclosures asserted therein; they considered them only to determine what disclosures defendants made." (citations omitted)).

---

[3] Defendants may be correct that they do not offer the reports for the truth of what they state but rather to show what information the public may have been aware of during the relevant time period. (*See* Doc. 44 at 13-15, 34). Nevertheless, the defendants fail to persuade the court that judicial notice of the reports is proper.

The *New York Times* article (Ex. 12) is the clearest offender here. Defendants cite the article as evidence that a market-wide decline (rather than Kohl's announcement of accounting errors) caused a decrease in Kohl's stock value. In their brief, defendants state: "Kohl's August 4, 2011 share price decline occurred in conjunction with a broader market downturn caused by concerns of the sovereign debt crisis in Europe, the potential downgrade of the U.S. credit rating, and the general weakness of the U.S. economy." (Doc. 44 at 34.) The statements within the article are subject to reasonable dispute; the court has no basis for knowing whether the author's assessment of the market was accurate or disputed by knowledgeable persons. The possible causes of stock market decline or Kohl's stock-price decline as discussed in the article are *not* capable of accurate and ready determination.

In *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995), the Seventh Circuit refused to take judicial notice of a company's annual report because "the fact in question . . . was not capable of accurate and ready determination by resort to the [filing]." *Id*. at 1355. The court determined judicial notice was improper because "indisputability is a prerequisite" and the facts were in dispute. *Id.* at 1354. Defendants' attempt to use proxy statements and other SEC filings here makes this case analogous to *Hennessy*. Defendants use the proxy statements, for instance, for the truth of their contents, to establish the amount of Kohl's stock holdings of the individual defendants. (See Doc. 44 at 21-26). Moreover, plaintiffs contest the accuracy of the information within the documents. The information within the proxy statements was reported by defendants to the SEC; there is no way for the court to accurately and readily determine at this time whether that information as reported was correct.

Similar to the proxy statements, defendants attached SEC Form 4s for the relevant time period. The Form 4s reflect Kohl's reporting of securities transactions. For reasons

8

similar to those for the proxy statements, it is improper for the court to consider the contents for their truth. Defendants cite the Form 4s not to show what they say, but instead to show that defendants bought or sold an amount of stock during the class period. (See Doc. 44 at 21-26). Plaintiffs have not had the opportunity to engage in discovery to disprove these numbers. Kohl's personnel reported those amounts, and it is impossible at this stage of the case for the court to determine whether they are correct.

Defendants seek to use McDonald's 10b5-1 trading plans for the truth of their contents and for what is said. (See generally Doc. 44). But there is nothing indicating that these documents are available to the public or allowing the court to readily determine whether the documents are authentic and their contents are true.

Defendants attached documents relating to a program for Kohl's to repurchase stock from its stockholders. Defendants seek to use the exhibits to establish that Kohl's announced the repurchase program, the terms of the announcement, *and* the total amounts of stock that were eventually bought. (See Doc. 44 at 30). To establish the third point, the court must accept the truth of what the documents say. But the truth of such facts is not readily and accurately determined; it is impossible for the court to know from these SEC forms whether stock was eventually purchased following the announcement.[4]

For all of these reasons, the motion to strike will be granted. All submitted exhibits will be disregarded and the court will disregard all references to them in the defendants' briefs.

---

[4] The court notes that the copy of the letter sent from the SEC's chief accountant to the chairman of the American Institute of Certified Public Accountants may be subject to judicial notice. Defendants seek to show a change in accounting guidelines and offer the letter for what it says rather than for its truth, and plaintiffs do not dispute the authenticity of the letter. (See Doc. 51 at 16-18.) Moreover, the letter appears to be publicly available based on the website address printed on it. However, as set forth above, Giuffra's affidavit is insufficient regarding the letter's origins.

## MOTION TO DISMISS

Striking the portions of the defendants' briefs referencing the exhibits is problematic, as defendants rely so heavily upon them. Defendants say their statement of facts was drawn from their exhibits *and* the Amended Complaint (Doc. 44 at 4 n.1), but a review of the citations in their statement of facts reveals that all but a handful are to their exhibits (*see id.* at 4-14). Unsurprisingly, much of their argument relies on the exhibits as well. Because the stricken portions of defendants' brief are so prevalent, the court cannot consider the motion as presently briefed.

Motions to dismiss, even in Private Securities Litigation Reform Act cases, must focus on the allegations in the complaint rather than on documents that essentially convert the motion into one for summary judgment. Because the defendants' motion to dismiss depends so heavily on documentary support that the court is striking, the motion to dismiss as briefed must be denied.

## AMENDED COMPLAINT

The court has ongoing concerns about the prolixity of the Amended Complaint—sixty-one pages, with 173 numbered paragraphs. *See UPS Store, Inc. v. Hagan*, No. 14cv1210, 2015 U.S. Dist. LEXIS 36971 (S.D.N.Y. Mar. 24, 2015) (addressing a 175-paragraph complaint and 1263-paragraph amended answer). Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Amended Complaint is repetitive in many respects. Allegations regarding the adjustments and restatements of financial information could have been more concise, block quotes could have been shortened, and repetitive quotations from the Form 10-Qs might have been avoided. In the event defendants choose to answer the Amended Complaint rather than filing a new motion to dismiss, the court wishes to avoid an equally lengthy answer. Consequently, before defendants answer the Amended Complaint,

*see* Fed. R. Civ. P. 12(a)(4), the parties must attend a conference to discuss pleadings and further proceedings in this case.

## CONCLUSION

Therefore,

IT IS ORDERED that plaintiffs' motion to strike (Doc. 50) is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss (Doc. 43) is denied without prejudice.

IT IS ORDERED that the parties participate in a status conference set for April 29, 2015, at 3:00 p.m., in Courtroom 222, 517 E. Wisconsin Avenue, Milwaukee, WI 53202. The parties are to notify the court within two weeks regarding whether out-of-town counsel will participate in the status conference. If so, the conference may be conducted by telephone at the parties' request.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE